IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 16, 2018

### STATE OF TENNESSEE v. CHIMAYNE LORREIZN TALLEY

**Appeal from the Criminal Court for Davidson County
No. 2016-D-2360    Monte Watkins, Judge**

_____

### No. M2018-00304-CCA-R3-CD

_____

Defendant, Chimayne Lorreizn Talley, pled guilty to theft of property over $2,500, vandalism under $1,000, and possession of a theft tool. The trial court imposed a sentence of seven years for theft, and eleven months, twenty-nine days each for vandalism and possession of a theft tool. The vandalism and possession of a theft tool convictions were ordered to be served concurrently with each other and consecutively to the theft conviction for an effective sentence of seven years, eleven months, and twenty-nine days. On appeal, Defendant argues that the trial court abused its discretion in setting the length of the sentences, by ordering his sentences to run consecutively, and by ordering his sentences to be served in confinement. Having reviewed the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;
Remanded for Entry of Corrected Judgment**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Manuel B. Russ, Nashville, Tennessee, for the appellant, Chimayne Lorreizn Talley.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Kristen Kyle-Castelli, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Background*

At the sentencing hearing, the State noted that in addition to the three felony charges listed on the pre-sentence report, Defendant had an additional theft conviction in

Gainesville, Georgia, in 2015 for which he received a four-year sentence. The charged offense of evading arrest that was listed on the report was actually a fugitive warrant, and the offense of evading arrest dated December 30, 2013, was also a fugitive warrant. Defendant incurred six additional charges after he was charged in the present case.

Detective Jeffrey Jobe of the Metropolitan Nashville Police Department testified that he was assigned to investigate a June 16, 2016 theft from the Kohl's department store located at 2330 Jackson Downs Boulevard. He said that Defendant was eventually arrested for the theft. Detective Jobe testified that he reviewed a video of the theft and that there was a second person, Mr. Simmons, involved. He said that Defendant and Mr. Simmons appeared to be "acting in concert to conceal items in the store." Detective Jobe also testified that Defendant was "kind of coordinating the efforts." Concerning the offenses, Detective Jobe said:

> Both individuals walk in the store. They've got bags, and during the course of their time, they're seen putting the items in bags. It looks like they conceal items in various locations in the store. At one point, they put the bags down, and then they go out, come back in the store, pick [ ] the bags [back] up leaving past the point of sale without purchasing the items.

He testified that Defendant and Mr. Simmons were apprehended in the parking lot before they got to their vehicle.

Detective Jobe interviewed Defendant at the Hermitage Precinct after his arrest. He read Defendant his *Miranda* rights, and Defendant mentioned an "incident that happened previously before this arrest at J. Crew at Opry Mills Mall where he did the same thing of taking items out of the store[.]" Defendant also said that he was followed by an employee and that he sprayed the individual with pepper spray. Defendant received a lifetime ban from Opry Mills Mall. Detective Jobe testified that Defendant told him that he sold the stolen merchandise to "other people via Instagram and other ways." Defendant also held yard sales to sell the stolen merchandise. Detective Jobe testified that Defendant was on probation in Gainesville, Georgia, at the time of the offense in this case.

Officer Jeffrey Leiser of the Metropolitan Nashville Police Department testified that he was on patrol on September 8, 2016, when he heard "over the east air that officers had identified [Defendant] being in a vehicle that they were behind." Officer Leiser noted that Defendant had evaded police on multiple occasions. Officer Leiser was in an unmarked vehicle so he thought that it would be easier for him to follow Defendant and avoid a pursuit. He said:

I followed the vehicle for a duration of time. It was starting to appear that he may be able to identify that we were behind him. We were heading over to the Napier Homes area. At which time, we stopped at a stop sign, and it was determined by several officers that this would be a safe time to stop his vehicle.

I activated my blue lights and pulled my vehicle alongside his. The vehicles behind me also activated their blue lights. At that point in time, he turned his vehicle wheel to the left and rammed the side of my car, pushing my car out of the way so he could continue on.

At that point in time, the damage sustained to the front end of my car was substantial enough that it caused a piece of sharp metal to be exposed, which punched a hole in the driver's side front tire of his vehicle, rendering that tire flat. He was only able to get his vehicle across Lafayette and into the Dollar General Parking lot, at which he got out of the vehicle and ran on foot into the Napier Homes.

Defendant was eventually found inside an apartment. Officer Leiser testified that he was familiar with Defendant from working patrol in East Nashville. He said: "I monitor east air frequently when I'm in that area, and I had heard his name mentioned multiple times in the east." Officer Leiser noted that Defendant had evaded police on multiple occasions and "had a fairly substantial list of outstanding warrants at the time of the incident."

Detective David Studer of the Metropolitan Nashville Police Department testified that he first came into contact with Defendant at the Baxter Alternative School. He also "had cases with him at Opry Mills Mall." Defendant was the suspect of several thefts that occurred at the mall. Detective Studer was currently involved in cases with Defendant. As part of his investigation, Detective Studer had researched Defendant's social media pages. He testified that Defendant advertised merchandise for sale on Facebook that he had stolen from various locations. Detective Studer also noted that some of the comments on Facebook were from individuals who appeared to be placing orders with Defendant for the merchandise. Detective Studer testified that on one particular Facebook post, Defendant talked about "popping the sensors" off of clothing.

Brenda Watson was employed as the Opry Mills Security Director. She was familiar with Defendant through "several incidents of shoplifting." Her first interaction with him was in November 2015. Ms. Watson testified that on one occasion, Defendant pepper sprayed an employee of J. Crew. He also entered the mall in September 2016, after having been previously banned from the mall in 2013, and grabbed some merchandise from one of the stores and ran back out. Ms. Watson noted that Defendant sometimes entered the mall dressed as a female. She said that in addition to J. Crew, Defendant had stolen items at the Tommy Hilfiger and Victoria's Secret stores. Ms.

Watson testified that several store managers were afraid to prosecute Defendant because he had threatened to pepper spray employees. She contacted the district attorney's office in 2016 seeking help with the string of thefts committed by Defendant.

Defendant gave an allocution to the court. He said:

> I admit that I was wrong, and I take full responsibility of my actions. Drug addiction is hard to overcome. If I didn't fall into drugs, I feel none of this would have happened.

> It had took [sic] control of my life. The reason for my involvement was to support my drug addiction. I'm apologizing for my actions, and I'm asking the Court for help.

*Analysis*

Defendant contends that the trial court abused its discretion by imposing "close to the maximum possible sentence for the conviction offenses," by ordering his sentences to run consecutively, and by ordering his sentences to be served in confinement.

Our standard of review of the trial court's sentencing determinations is whether the trial court abused its discretion, and we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401 (2017), Sentencing Comm'n Cmts. In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2017).

Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. In misdemeanor sentencing, the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Thus, the trial court is afforded considerable latitude in misdemeanor sentencing. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999).

With respect to consecutive sentencing, our supreme court has held that the standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> (6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). In *Pollard*, the court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." 432 S.W.3d at 862. "So long as a trial court properly articulates its reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*; *Bise*, 380 S.W.3d at 705.

In *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012), the supreme court expanded its holding in *Bise* to trial courts' decisions regarding alternative sentencing. Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1) (2017).

Here, the record reflects that the trial court in sentencing Defendant applied two enhancement factors, including Defendant's history of criminal convictions in addition to those necessary to establish the range, and Defendant has failed to comply with conditions of a sentence involving release into the community. *See* T.C.A. § 40-35-114(1), (8)(B). The court did not apply any mitigating factors. The record supports the application of the two enhancement factors, and Defendant does not challenge the application of those factors. Defendant asserts that his non-violent property crimes do not warrant the sentence imposed.

Defendant's conviction for felony theft of property over $2,500 is a Class D felony. T.C.A. § 39-16-603(b). As a Range II offender, Defendant's sentencing range was "not less than four (4) nor more than eight (8) years." T.C.A. § 40-35-112(b)(4). Defendant's sentence of seven years for this offense is within the range.

We conclude that the trial court properly sentenced Defendant. The trial court considered the relevant principles and sentenced Defendant to within-range sentences. We further conclude the trial court did not abuse its discretion by imposing the maximum sentence of eleven months, twenty-nine days for each of the Class A misdemeanor

convictions of possession of a theft tool and vandalism. As such, the Defendant is not entitled to relief on this issue.

As for consecutive sentencing, the trial court based its imposition of consecutive sentencing on its findings that Defendant "is a professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood;" that Defendant "is an offender whose record of criminal activity is extensive;" and that Defendant was on probation at the time he committed the offenses in this case. T.C.A § 40-35-115(1),(2), and (6). Defendant argues that the trial court erred in finding that he was a professional criminal. He further states:

> Despite [Defendant's] prior record for theft, the trial court abused its discretion when electing to make [Defendant's] sentences consecutive to one another. An 8[-]year effective sentence for theft does not comport with the mandates of T.C.A. § 40-35-102(2) that the sentence shall be no greater than "deserved for the offense committed." Despite a history of other thefts and criminal behavior, the length of sentence is greater than warranted for the offense committed and the trial court erred in making the counts consecutive.

The record amply supports the trial court's findings. The presentence report reflects that Defendant has nine prior convictions, and he received six additional charges after being charged in this case. As for being a professional criminal, the record demonstrates that the twenty-three-year-old Defendant had only held one job for six months at McDonald's. Instead of holding a job, Defendant chose to make a living by shoplifting and selling the stolen merchandise on social media and in yard sales. Detective Studer testified that some of the comments on Defendant's Facebook page were from individuals who appeared to be placing orders with Defendant for the stolen merchandise. Additionally, testimony at the sentencing hearing showed that Defendant was banned from Opry Mills Mall because of his excessive shoplifting, yet he continued entering the mall and stealing merchandise, sometimes altering his appearance to do so. He threatened store managers with pepper spray in order to facilitate his crimes. Defendant was also on probation out of Dawson County, Georgia at the time of the offenses in this case. Therefore, the trial court did not abuse its discretion by ordering Defendant's theft conviction to be served consecutively to the concurrent sentences for vandalism and possession of a theft tool. Defendant is not entitled to relief on this issue.

Finally, Defendant asserts that the trial court erred by ordering his sentence to be served in confinement. Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a

favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6)(A). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-303(b)). As a Range II offender, Defendant in this case was eligible for alternative sentencing, but he was not considered a favorable candidate for alternative sentencing, options. *See id*. § 40-35-102(6).

In support of his argument, Defendant states:

> Though [Defendant] has a substantial prior record and had not done well during prior stints on community release, his offenses have been, for the most part, non-violent property crimes. He does not meet all of the criterion listed in the code section for defendants who are favorable candidates for incarceration. The trial court should have crafted an alternate sentence that would have promoted [Defendant's] rehabilitation.

Concerning alternative sentencing, the trial court in this case relied on Tennessee Code Annotated section 40-35-103(1)(B), that states, "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses."

The record supports the trial court's denial of alternative sentencing. Defendant and another individual were involved in a shoplifting scheme in which Defendant admitted that he frequently stole merchandise from various stores for the purpose of selling the items to others. Defendant boasted about his crimes on social media and posted photographs of the stolen merchandise, along with images of yard sales that he conducted in order to sell the items. Defendant also advertised stolen merchandise that he had for sale on Facebook. Brenda Watson, Opry Mills Security Director, testified that on one occasion, Defendant pepper sprayed an employee of J. Crew while committing a shoplifting offense. He also entered the mall in September 2016, after having been previously banned from the mall in 2013 for shoplifting, and grabbed some merchandise from one of the stores and ran back out. Ms. Watson testified that several store managers were afraid to prosecute Defendant because he had threatened to pepper spray employees. She contacted the district attorney's office in 2016 seeking help with the string of thefts committed by Defendant.

We also note that while not explicitly stated by the trial court, the record also reflects that Defendant has a long history of criminal conduct, and measures less restrictive than confinement have frequently or recently been applied unsuccessfully to Defendant. T.C.A. § 40-35-103(1)(A) and (C). In considering which enhancement factors applied in Defendant's case, the trial court said that Defendant "has a history of

criminal behavior" and that "he has a previous unwillingness to comply with conditions of a sentence while on release." The trial court also noted that Defendant was a professional criminal and he had a "record of criminal activity that is extensive." As previously stated in this opinion, the presentence report reflects that the twenty-three-year-old Defendant, beginning in 2012 at the age of eighteen, has nine prior convictions, and he received six additional charges after being charged in this case. He was on probation when he committed the present offenses, and his probation was violated in two other cases.

We conclude that the trial court did not abuse its discretion by ordering Defendant to serve his effective sentence of seven years, eleven months and twenty-nine days in confinement. However, we note that the judgments for the concurrent misdemeanor sentences reflect that the sentences are to be served in the Department of Correction. A sentence imposed for a misdemeanor offense is to be served in a jail or workhouse, not a Department of Correction facility. T.C.A. § 40-35-314. While neither party has raised this issue, this Court has the authority to remand to correct the sentence. Therefore, we remand this case for corrected judgments to reflect that the concurrent sentences for vandalism and possession of a theft tool are to be served in the jail or workhouse.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed but we remand for entry of a corrected judgment.

_____
THOMAS T. WOODALL, JUDGE